**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

    v.

CUMBERLAND DRW LLC,

              Defendant.

No. 24-CV-09842 (MFK)

---

**BRIEF FOR *AMICUS CURIAE* COINBASE, INC.**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**CORPORATE DISCLOSURE STATEMENT**

Counsel for Coinbase, Inc. certifies that Coinbase, Inc., is wholly owned by Coinbase Global, Inc., which is a publicly held corporation. Coinbase Global, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of Coinbase Global, Inc.'s stock.

## TABLE OF CONTENTS

Page

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* .........................................................1

ARGUMENT .........................................................................................................................3

I.     The SEC's Sharp And Unexplained Reversal In Its Interpretation Of The Securities Laws Has Put The Digital-Asset Industry In A Catch-22 ...................................3

      A.     The SEC Initially Suggested Having Cabined Authority Over Digital Assets ...................................................................................................................3

      B.     The SEC Has Since Asserted Expansive and Ever-Changing Authority Over Digital Assets In Contravention Of The Securities Laws ...............................4

      C.     The SEC Has Simultaneously Refused To Explain How Digital-Asset Firms *Can* Comply With The Securities Laws .......................................................7

II.    The SEC Has Unlawfully Refused To Provide Needed Clarity Through Rulemaking ................................................................................................................10

III.   The SEC's Catch-22 Requires Dismissal Of This Enforcement Action ...........................13

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*All. for Cannabis Therapeutics v. DEA*,
930 F.2d 936 (D.C. Cir. 1991) ...................................................................12

*Coinbase v. SEC*,
2025 WL 78330 (3d Cir. Jan. 13, 2025) ...........................2, 3, 4, 5, 6, 10, 12, 13, 14

*Coinbase v. SEC*,
No. 23-3202 (3d Cir.) .....................................................7, 9, 10, 11, 12

*In re Coinbase, Inc.*,
No. 23-1779 (3d Cir.) ...................................................................10

*FCC v. Fox TV Stations, Inc.*,
567 U.S. 239 (2012) ...................................................................12

*Ohio v. EPA*,
144 S. Ct. 2040 (2024) ...............................................................11

*SEC v. Binance Holdings Limited*,
2024 WL 3225974 (D.D.C. Jun. 28, 2024) ...........................................5, 6

*SEC v. Binance Holdings Ltd.*,
No. 1:23-cv-01599 (D.D.C. filed June 5, 2023) .....................................6, 7

*SEC v. Coinbase, Inc.*,
2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) ...............................................5

*SEC v. Ripple Labs., Inc.*,
682 F. Supp. 3d 308 (S.D.N.Y. 2023) .................................................5

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) ...................................................................14

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ...............................................................14

**Statutes and Regulations**

15 U.S.C. § 77h(a) ...................................................................4

17 C.F.R. § 240.15c3-3 ...............................................................8

SEC, *Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, 86
Fed. Reg. 11627 (Feb. 26, 2021) .....................................................9

**Other Authorities**

Amitoj Singh, *SEC's Gensler Won't Reveal His View on Trump's Bitcoin
Reserve, Reiterates Bitcoin Isn't a Security*, CoinDesk (Sept. 27, 2024),
https://tinyurl.com/2rwsckyu .........................................................7

# TABLE OF AUTHORITIES

Page(s)

Brian Armstrong, *Coinbase Is a Mission Focused Company*, Coinbase Blog (Sept. 27, 2020), https://tinyurl.com/3x63ajk7 .................................................................... 1

Coinbase, Petition for Rulemaking, SEC File No. 4-789 (July 21, 2022), https://tinyurl.com/4mt2evcz ......................................................................................... 8, 10, 11

Coinbase, Supplemental Comment Letter, SEC File No. 4-789 (Dec. 6, 2022), https://tinyurl.com/36zmapuw ...................................................................................... 8

First on CNBC: CNBC Transcript: *SEC Chair Gary Gensler Speaks with CNBC's "Squawk Box" Today*, CNBC (Feb. 10, 2023), https://tinyurl.com/3z38uavc ...................... 5

*Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III: Hearing Before the H. Comm. on Fin. Servs.*, 117th Cong. 12 (2021), https://tinyurl.com/59m9psfa .................................................... 4, 7

Gary Gensler, SEC Chair, *Prepared Remarks of Gary Gensler on Crypto Markets Penn Law Capital Markets Association Annual Conference* (Apr. 4, 2022), https://tinyurl.com/bd767cuv ......................................................................................... 7

Gary Gensler, SEC Chair, *Partners of Honest Business and Prosecutors of Dishonesty* (Oct. 25, 2023), https://tinyurl.com/ayp4tkwp ................................................ 5

Hester M. Peirce, Comm'r, SEC, *Rendering Innovation Kaput: Statement on Amending the Definition of Exchange* (Apr. 14, 2023), https://tinyurl.com/4v7hvwae ..................................................................................... 13

Jennifer Schonberger, *Outgoing SEC Chair Gensler Talks Crypto Regulation, AI, His Legacy* (Jan. 14, 2025), https://tinyurl.com/43jjjv99 .......................................... 6

Mark T. Uyeda, Comm'r, SEC, *Statement on Proposed Rule Regarding the Safeguarding of Advisory Client Assets* (Feb. 15, 2023), https://tinyurl.com/2ztdcxx5 ........................................................................................ 13

Mark T. Uyeda, Comm'r, SEC, *Statement on the Registration for Index-Linked Annuities and Registered Market-Value Adjustment Annuities* (July 1, 2024), https://tinyurl.com/njb5p3z6 ......................................................................................... 9

*Oversight of the Securities and Exchange Commission*, 118th Cong., 1st Sess. (Apr. 18, 2023), https://tinyurl.com/3pf7d9xu ........................................................... 7

Press Release, SEC, SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force (Jan. 21, 2025), https://tinyurl.com/mrx29f2c ...................................................................................... 1

SEC, *Correspondence Related to Draft Registration Statement* at 4 (Dec. 7, 2020), https://tinyurl.com/5n6f375n ............................................................................ 4

SEC, *Joint Staff Statement on Broker-Dealer Custody of Digital Asset Securities* (July 8, 2019) ................................................................................................................ 8

**TABLE OF AUTHORITIES**

Page(s)

*SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo (Dec. 7, 2022), https://tinyurl.com/538un3xt ..................................................4, 5

SEC, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* (July 25, 2017), https://bit.ly/4auJmSc ...............................................3

William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://tinyurl.com/5n94tj64 ..........................4, 7

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*[1]

Coinbase, Inc. operates the largest digital-asset trading platform in the United States. Founded in 2012, Coinbase's mission is to create a more open, inclusive, and efficient financial system by leveraging digital assets and blockchain technology. Brian Armstrong, *Coinbase Is a Mission Focused Company*, Coinbase Blog (Sept. 27, 2020), https://tinyurl.com/3x63ajk7. That mission has been a massive success. Digital assets provide a financial lifeline to millions of unbanked individuals and reduce the costs of cross-border remittances to developing countries.

In the past few years, however, the SEC has attacked the digital-asset industry through an arbitrary regulation-by-enforcement campaign. As new SEC leadership acknowledged this week in announcing a crypto task force, the agency has "regulate[d] crypto retroactively and reactively, often adopting novel and untested legal interpretations along the way."[2] The defendant here—Cumberland DRW LLC—is one of the many victims of the SEC's onslaught. Coinbase is another. Almost four years ago, Coinbase became a public company through an offering allowed by the SEC. At the time, the SEC never asserted that any digital assets listed on Coinbase's platform were securities, or that Coinbase was required to register with the SEC. Coinbase is not registered with the SEC today because Coinbase still does not list securities; the digital assets on Coinbase's platform are instead commodities, akin to gold or diamonds. But because Coinbase and many others in the digital-asset industry would like to be able to list digital assets that are offered as securities, Coinbase has actively engaged with the SEC for years about (among other things) the need for the SEC to explain through rulemaking its views about how the securities laws apply to digital assets.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* made any monetary contribution to its preparation or submission.

[2] Press Release, SEC, SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force (Jan. 21, 2025), https://tinyurl.com/mrx29f2c.

Instead of engaging with Coinbase and others on that issue, the SEC turned sharply against them. It began to assert an untenably sweeping, yet unpublished and indeterminate, view of its jurisdiction. But while the SEC has embarked on a scorched-earth enforcement campaign against digital-asset firms, the agency has refused to explain definitively through rulemaking *which* digital assets it now believes are subject to the securities laws, *why* it changed its mind, and *how* digital-asset firms can comply with inapt, decades-old rules. The agency has left digital-asset firms with little choice but "to cross their fingers and pray that the agency does not fault them" and seek devastating penalties and business-altering injunctions. *Coinbase, Inc. v. SEC*, 2025 WL 78330, at *28 (3d Cir. Jan. 13, 2025) (Bibas, J., concurring).

Worse, the SEC has steadfastly refused to justify withholding that essential clarity from the digital-assets industry. Just last week, the Third Circuit held that the SEC's denial of a petition filed by Coinbase to commence a rulemaking addressing these issues was "conclusory and insufficiently reasoned, and thus arbitrary and capricious." *Coinbase*, 2025 WL 78330, at *1. The unanimous panel vacated the SEC's order, reasoning that the agency had failed to provide any "reasoned explanation" for its refusal to engage in rulemaking. *Id.* at *19. Judge Bibas concurred separately to detail why the SEC's strategy of "sporadically enforcing ill-fitting rules against crypto companies that are trying to follow the law" raises a "serious constitutional problem" in an enforcement posture, because it "does not give potential defendants the notice that due process requires." *Id.* at *27-*29 (Bibas, J., concurring).

This enforcement action squarely presents that constitutional problem. Like Coinbase and the rest of the digital-asset industry, Cumberland remains caught in a Catch-22 of the SEC's making: The SEC sues digital-asset firms seeking punitive, retroactive penalties for their purported failure to "come in and register." But the agency simultaneously refuses to explain on the record,

through a rulemaking, its position on the securities laws' scope and how compliance with those requirements wholly inapt for digital assets is even possible. By thus "combining regulatory un-certainty with unpredictable enforcement," the SEC has placed Cumberland and the entire crypto industry in an intractable "bind." *Coinbase*, 2025 WL 78330, at \*28-\*29 (Bibas, J., concurring). Indeed, the agency's new leadership acknowledged as much this week, conceding that the "result" of the SEC's indiscriminate enforcement campaign has been "confusion about what is legal."[3]

To be clear, the SEC's expansive position is wrong because it fundamentally misreads the securities laws and is foreclosed by the major-questions doctrine. But irrespective of its overreach on the merits, the agency's war of regulation-by-enforcement has also deprived digital-asset firms like Cumberland and Coinbase of the fair notice that the Constitution and bedrock tenets of federal law require. Dismissal is warranted on either ground.

## ARGUMENT

### I. The SEC's Sharp And Unexplained Reversal In Its Interpretation Of The Securities Laws Has Put The Digital-Asset Industry In A Catch-22

The SEC has put Coinbase and the entire digital-asset industry in an impossible position. It has launched an aggressive and accelerating campaign of enforcement suits, prosecuting firms that offer, sell, or develop digital assets for purportedly failing to comply with the SEC's existing rules. Yet the SEC has obdurately refused to engage in notice-and-comment rulemaking to explain *when* it thinks those rules apply and *how* digital-asset firms possibly can comply with them.

### A. The SEC Initially Suggested Having Cabined Authority Over Digital Assets

For years, the SEC adhered to the well-founded position that it had at most limited authority over digital assets. In its 2017 "DAO report," which analyzed a set of transactions involving a single digital asset, all the agency could say definitively is that whether the securities laws apply

---

[3] *Supra* note 2.

to a digital asset turns on the "particular facts and circumstances."[4] *See also Coinbase*, 2025 WL 78330, at *25 (Bibas, J., concurring) ("[T]hat report was silent on other crypto assets."). In 2018, the SEC's then-Director of Corporation Finance publicly stated that a digital asset "all by itself is *not* a security."[5] And in May 2021, the SEC Chair testified before Congress that "the exchanges trading in these crypto assets do not have a regulatory framework either at the SEC, or our sister agency, the Commodity Futures Trading Commission" and that "only Congress … could really address" that issue.[6]

The SEC's actions at the time evidenced the same understanding. In April 2021, for example, the SEC cleared the way for Coinbase to become a public company after reviewing and commenting on Coinbase's business model. The SEC allowed Coinbase's public listing as consistent with "the public interest and the protection of investors," 15 U.S.C. § 77h(a), without once suggesting that Coinbase's business model violated the securities laws or that Coinbase must register with the SEC.[7]

## B. The SEC Has Since Asserted Expansive and Ever-Changing Authority Over Digital Assets In Contravention Of The Securities Laws

Since then, however, the SEC's views evidently have shifted dramatically, even though it has continually refused to put its position in the Federal Register. *See* ECF 29 at 7-8 ("Def. Mem."). By late 2022, the SEC's then-Chair Gary Gensler had claimed that the agency *does* "have enough authority … in this space" to require digital-asset firms "to come into compliance" with

---

[4] SEC, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO* at 10 (July 25, 2017), https://bit.ly/4auJmSc.

[5] William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://tinyurl.com/5n94tj64 (emphasis added).

[6] *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III: Hearing Before the H. Comm. on Fin. Servs.*, 117th Cong. 12 (2021), https://tinyurl.com/59m9psfa.

[7] SEC, *Correspondence Related to Draft Registration Statement* at 4 (Dec. 7, 2020), https://tinyurl.com/5n6f375n.

SEC registration requirements.[8]  Over the following year, he proceeded to regularly assert that the "vast majority" of digital assets *are* securities, that there is a "clear way" for digital-asset firms to register, and that digital-asset firms must "come in and register" or face "enforcement actions."[9] True to those threats, the SEC soon launched a wave of enforcement actions—including against Coinbase—premised on that new position.  *See infra* at 11.

The SEC's new position is wrong.  Most digital assets are not securities, and they certainly do not implicate the federal securities laws when traded on the secondary market.  Sellers in secondary-market transactions have no obligation or continuing commitment to each other past the point of sale.  Nor do buyers obtain any rights as against the asset's issuer, as they do with securities like stocks or bonds. These kinds of trades thus are not securities transactions but asset sales—albeit of digital assets rather than physical ones.  *See SEC v. Ripple Labs., Inc.*, 682 F. Supp. 3d 308, 330 (S.D.N.Y. 2023) (blind bid-ask crypto transactions involving the issuer are not investment contracts); *SEC v. Binance Holdings Limited*, 2024 WL 3225974, at *19-*20 (D.D.C. Jun. 28, 2024) (agreeing with *Ripple* and questioning whether any crypto transactions conducted on secondary markets can qualify as investment contracts); *see also SEC v. Coinbase, Inc.*, 2025 WL 40782, at *10 (S.D.N.Y. Jan. 7, 2025) (certifying question for interlocutory appeal based in part on "persistent disagreement about how to apply *Howey* to crypto-assets").

In swerving from that view, the SEC has refused to engage in rulemaking, as Coinbase and many others have urged.  Instead, the SEC has repeatedly punted on clarifying the reach of the authority it now purports to wield.  The agency will not even say "which [digital] assets it views

---

[8] *SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo (Dec. 7, 2022), https://tinyurl.com/538un3xt.

[9] *E.g.*, Gary Gensler, SEC Chair, *Partners of Honest Business and Prosecutors of Dishonesty* (Oct. 25, 2023), https://tinyurl.com/ayp4tkwp; First on CNBC: CNBC Transcript: *SEC Chair Gary Gensler Speaks with CNBC's "Squawk Box" Today*, CNBC (Feb. 10, 2023), https://tinyurl.com/3z38uavc; *SEC's Gensler: The 'Runway Is Getting Shorter'*, *supra* note 6.

as securities." *Coinbase*, 2025 WL 78330, at *28 (Bibas, J., concurring). Indeed, at oral argument before the Third Circuit, it "refused to say whether Bitcoin and Ether"—two of the most longstanding, prominent, and decentralized digital assets—"are securities." *Id.* at *27. "That evasiveness [wa]s puzzling," to put it mildly, *id.*, because it contradicted the agency's own actions, including its approvals of Bitcoin and Ether ETFs, the prior statements it made to Coinbase, and the later statements of its then-Chair.[10] Even if the SEC were to recognize once and for all that Bitcoin and Ether are *not* securities, moreover, the agency has offered no rational justification for treating Bitcoin and Ether differently from any of the digital assets that it has asserted *are* securities.

Nor has the SEC explained how it reads the securities laws to encompass digital assets when many traditional assets—including real estate, commodities, and trading cards—have never been subject to SEC jurisdiction, even though they possess attributes the SEC appears to regard as indicative of a security. Instead, as one court recently recognized in rejecting the SEC's novel view, the agency has spoken "out of both sides of its mouth" and has "le[ft] th[at] Court, the industry, and future buyers and sellers with no clear differentiating principle between tokens in the marketplace that are securities and tokens that aren't."[11] In response, the SEC changed its position *again*, expressing "regre[t]" for the "confusion" it created.[12] "Confusion" is the same term the SEC's new leadership used this week in acknowledging the "elusive" "[c]larity" that the agency's digital-asset efforts have yielded.[13] The agency recognized that "[t]he SEC can do better,"[14] as even a small sampling of the SEC's contradictory positions over the past few years illustrates:

---

[10] *See supra* note 5; Jennifer Schonberger, *Outgoing SEC Chair Gensler Talks Crypto Regulation, AI, His Legacy* at 7:25 (Jan. 14, 2025), https://tinyurl.com/43jjjv99 ("My predecessor [and] I, we've never said Bitcoin is a security. We haven't said Ethereum is a security.").

[11] *Binance*, 2024 WL 3225974, at *21 nn.15, 22.

[12] SEC Mem. in Support of Mot. for Leave to Amend Compl. at 24 n.6, *Binance*, No. 1:23-cv-01599 (D.D.C. Sept. 12, 2024), ECF 273-1.

[13] *Supra* note 2.

[14] *Supra* note 2.

| Issue | Examples Of The SEC's Conflicting Statements | | | | |
|---|---|---|---|---|---|
| Is a digital asset a security? | **No (2018)**: A digital asset "all by itself is *not* a security."[15] | **Yes (2021)**: A digital asset "embodi[es]" and "represents th[e] investment contract."[16] | **No (2024)**: A digital asset is just "computer code."[17] | **Yes (2024, five days later)**: The digital asset itself "represents the investment contract."[18] | **No (2024, eight months later)**: The digital asset "itself" is "not" "the security."[19] |
| Is Bitcoin a security? | **No (2023)**: "[T]he SEC has never claimed [Bitcoin] is a security."[20] | | **Maybe (2024)**: "[T]here's not an answer."[21] | **No (2024, four days later)**: "[T]hat's not a security."[22] | |
| Can the SEC regulate digital asset exchanges? | **No (2021)**: "Right now, there is not a market regulator [for] … crypto exchanges."[23] | | **Yes (2022)**: "Congress gave us a broad framework … to regulate exchanges."[24] | | |
| Is existing law clear? | **No (2020)**: There is "no certainty" about whether digital assets are securities.[25] | | **Yes (2023)**: "We have a clear regulatory framework built up over 90 years."[26] | | |

## C.   The SEC Has Simultaneously Refused To Explain How Digital-Asset Firms *Can* Comply With The Securities Laws

The SEC also has failed to explain how digital-asset firms *could* comply with the agency's

existing rules, which were designed decades ago for legacy financial instruments that look nothing

---

[15] Hinman, *When Howey Met Gary*, *supra* note 3 (emphasis added).

[16] Opp. to Mot. to Intervene at 24, *SEC v. Ripple Labs, Inc.*, No. 1:20-cv-10832 (S.D.N.Y. May 3, 2021), ECF 153 (emphasis omitted).

[17] Tr. at 18:23, *SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. Feb. 22, 2024), ECF 26-1.

[18] Tr. at 92:14-15, *Payward*, No. 3:23-cv-06003 (N.D. Cal. Feb. 22, 2024), ECF 26-2.

[19] *Supra* note 10.

[20] SEC Opp. Mot. to Dismiss at 49, *Binance*, No. 1:23-cv-01599 (D.D.C. Nov. 7, 2023), ECF 172.

[21] Oral Arg. Tr. at 32:7-14, *Coinbase,* No. 23-3202 (3d Cir. Oct. 7, 2024), ECF 59.

[22] Amitoj Singh, *SEC's Gensler Won't Reveal His View on Trump's Bitcoin Reserve, Reiterates Bitcoin Isn't a Security*, CoinDesk (Sept. 27, 2024), https://tinyurl.com/2rwsckyu.

[23] *Game Stopped?*, *supra* note 4.

[24] Gary Gensler, SEC Chair, *Prepared Remarks of Gary Gensler on Crypto Markets Penn Law Capital Markets Association Annual Conference* (Apr. 4, 2022), https://tinyurl.com/bd767cuv.

[25] SEC, *Correspondence Related to Draft Registration Statement*, *supra* note 5.

[26] *Oversight of the Securities and Exchange Commission* at 4:12:30-58, 118th Cong., 1st Sess. (Apr. 18, 2023), https://tinyurl.com/3pf7d9xu.

like digital assets. The SEC's digital-asset-related enforcement actions are ostensibly premised on the proposition that digital-asset firms can "come in and register" with the agency. Yet, as Coinbase and others have repeatedly shown the SEC, digital-asset firms simply cannot comply with the SEC's existing rules. *See, e.g.*, Coinbase, Petition for Rulemaking, SEC File No. 4-789 (July 21, 2022), https://tinyurl.com/4mt2evcz ("Coinbase Petition").

Most relevant to this case, the SEC's demand that Cumberland register as a securities dealer, *see* ECF 1 ¶ 2 ("Compl."), willfully ignores that existing SEC rules make it effectively *impossible* for registered broker-dealers to custody digital assets. The SEC's Customer Protection Rule requires broker-dealers to maintain physical possession or control over customers' securities. *See* 17 C.F.R. § 240.15c3-3. But the SEC Staff's "general position has been that holding block-chain private keys"—which is how companies custody and control digital assets—"does not qualify as good physical possession or control." Coinbase Petition 23 (citing SEC, *Joint Staff Statement on Broker-Dealer Custody of Digital Asset Securities* (July 8, 2019) ("the fact that a broker-dealer (or its third party custodian) maintains the private key may not be sufficient evidence by itself that the broker-dealer has exclusive control of the digital asset security")).

Additionally, there are no meaningful registered digital-asset securities for a registered broker-dealer to buy and sell. That is because, at the most basic level, many digital assets could not function if they had to be registered as securities. All digital-asset transactions would have to be routed through a broker-dealer on a registered exchange, subjecting them to clearing and settlement rules that would not permit the real-time uses for which the assets are designed. Coinbase Petition 8. Digital-asset developers also are unable to comply with registration and disclosure requirements designed for legacy financial instruments managed by centralized companies, rather than for digital assets operating on decentralized blockchains. *Id.* at 12-14, 18; *see also* Coinbase,

Supplemental Comment Letter, SEC File No. 4-789, at 3 (Dec. 6, 2022), https://ti-nyurl.com/36zmapuw.  And those problems are just the tip of the iceberg.  *See* Coinbase Petition 23-27 (discussing additional problems); *see also* Coinbase Opening Br. 40-46, *Coinbase*, No. 23-3202 (3d Cir. Mar. 11, 2024), ECF 16 (same).

The SEC's policy statement on the "Custody of Digital Asset Securities by Special Purpose Broker-Dealers" does not resolve these structural issues.  The only "relief" it provides—which expires in just over a year—does not address *which* digital assets the SEC believes are securities or *how* digital-asset broker-dealers can comply with existing rules.  SEC, *Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, 86 Fed. Reg. 11627, 11628 (Feb. 26, 2021).  And even if there were a legal path to compliance, maintaining custody of digital assets would be economically non-viable for broker-dealers because SEC Staff Accounting Bulletin No. 121 has long required broker-dealers to record the digital assets they custody as liabilities on their balance sheet.  *See* Coinbase Petition 24.  As a result, broker-dealers would need to contribute a dollar of cash as equity for every dollar worth of digital assets they hold for customers—rendering the business model completely unsustainable (by design).  *See id.*

Instead of confronting these glaring workability problems, the SEC has refused to respond—let alone engage in the rulemaking necessary to adapt its rules for digital assets, as it has done for other industries.[27]  As a result, the SEC has ensnared digital-asset firms in a Catch-22: They are told to comply with inapt, inapplicable existing rules designed for legacy financial instruments, which would render many digital assets useless; yet companies face punitive, retroactive SEC enforcement actions for failing to achieve the impossible.  Meanwhile, the SEC refuses to conduct the rulemaking needed to make compliance possible.  Through this one-two punch, "the

---

[27] *E.g.*, Mark T. Uyeda, Comm'r, SEC, *Statement on the Registration for Index-Linked Annuities and Registered Market-Value Adjustment Annuities* (July 1, 2024), https://tinyurl.com/njb5p3z6.

SEC has sidestepped the rulemaking process by pursuing a de facto ban through enforcement instead." *Coinbase*, 2025 WL 78330, at *28 (Bibas, J., concurring). The ultimate goal is to drive the industry out of business by demanding compliance the agency knows is infeasible, and then aggressively pursuing companies that fail to achieve the impossible for their supposed disregard for the law.

## II.    The SEC Has Unlawfully Refused To Provide Needed Clarity Through Rulemaking

Coinbase's experience epitomizes the industry's predicament. In July 2022, to break the SEC-created regulatory logjam, Coinbase petitioned the SEC for rulemaking. *See* Coinbase Petition, *supra*. To be clear, Coinbase strongly disagrees that the SEC has the statutory authority it has claimed over most digital assets. But if the SEC seeks to assert that authority, the APA and basic principles of fair notice require it to articulate and explain its revised view in advance through rulemaking, resulting in rules subject to judicial review *before* the SEC enforces that new view.

Coinbase's petition identified critical issues that the SEC needs (but refuses) to address through rulemaking. It stressed the SEC's "[l]ack of clarity regarding how to determine whether a digital asset is a security," and urged the SEC to "defin[e] a digital asset security through rulemaking." Coinbase Petition 5, 7-12. The petition also detailed many ways that existing regulations are "fundamentally incompatible with the operation of digital asset[s]," rendering those rules unworkable for digital-asset firms and making compliance impossible. *Id.* at 5; *see id.* at 6-8, 12-13, 15-18, 20-27. Coinbase's petition garnered widespread support from more than 1,000 stakeholders, including the U.S. Chamber of Commerce's Center for Capital Markets Competitiveness. *See* J.A. Vol. 2 at JA59, *Coinbase*, No. 23-3202 (3d Cir. Mar. 11, 2024), ECF 17.

Yet the SEC stood silent. In April 2023, after ten months without word from the SEC, Coinbase sought mandamus from the Third Circuit to compel the SEC to act on the long-pending rulemaking petition. Coinbase Pet. Review, *In re Coinbase, Inc.*, No. 23-1779 (3d Cir. Apr. 26,

2023), ECF 1-1. By withholding a formal denial of the petition, Coinbase explained, the SEC was frustrating judicial review through an impermissible pocket veto. *See id.* at 17-22. And although the SEC's briefing asserted that it had not made up its mind on Coinbase's rulemaking petition, the SEC commenced an enforcement action against Coinbase weeks later, alleging that Coinbase was failing to comply with the very securities regulations that Coinbase's rulemaking petition (and mandamus action) explained do not work for digital assets. *See SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. filed June 6, 2023), ECF 1. Mere hours after the SEC filed its suit, the Third Circuit *sua sponte* ordered the SEC to explain its refusal to respond to Coinbase's rulemaking petition.

Only months later, in December 2023, did the SEC finally act on Coinbase's petition. But its response did not begin to engage with the serious issues Coinbase had raised. The SEC issued a terse, two-page letter denying Coinbase's rulemaking petition with virtually no rationale. *See* Coinbase Pet. Review Ex. A, *Coinbase*, No. 23-3202 (3d Cir. Dec. 15, 2023), ECF 1-1. In response to Coinbase's workability concerns, the SEC offered a single sentence of ipse dixit: "The Commission disagrees with the Petition's assertion that application of existing securities statutes and regulations to crypto asset securities, issuers of those securities, and intermediaries in the trading, settlement, and custody of those securities is unworkable." *Id.* at 2. The SEC did not explain *why* it disagreed—flouting the core APA principle that agency action must be "reasonable and reasonably explained." *Ohio v. EPA*, 144 S. Ct. 2040, 2053 (2024) (citation omitted).

Coinbase promptly sued the SEC in the Third Circuit again to challenge its unexplained denial of Coinbase's rulemaking petition. *See Coinbase, Inc. v. SEC*, No. 23-3202 (3d Cir.). Throughout that litigation, the SEC *still* made no effort to explain how its rules could work for digital-asset firms. Instead, the agency took the remarkable position that it *doesn't matter* whether

"this new industry *can* comply with the existing regulatory framework."  SEC Br. 34, *Coinbase*, No. 23-3202 (3d Cir. May 10, 2024), ECF 39 (quotation marks omitted); *see also* Def. Mem. 36.  In other words, the SEC maintained it can enforce its wavering views of purported legal requirements it knows firms cannot satisfy and thereby shutter an industry the agency disfavors—contravening the settled rule that "[i]mpossible requirements imposed by an agency are perforce unreasonable."  *All. for Cannabis Therapeutics v. DEA*, 930 F.2d 936, 940 (D.C. Cir. 1991).

Just last week, in a unanimous decision written by Judge Ambro, the Third Circuit held that the SEC's "conclusory and insufficiently reasoned" denial order was arbitrary and capricious, in violation of the APA.  *Coinbase*, 2025 WL 78330, at *1.  Although noting that "denials of petitions to institute rulemaking proceedings … are scrutinized at the most deferential end of the … spectrum," the Third Circuit held that the SEC had failed to clear even that bar.  *Id.* at *5 (citation omitted).  The agency, the court said, had failed to "provide ... any assurance that [it] considered Coinbase's workability objections," let alone "accounted for them."  *Id.* at *16.  And as to the agency's other supposed grounds for the denial, the SEC had likewise failed to offer a "reasoned explanation" to which the court could defer.  *Id.* at *19.  At bottom, the Third Circuit rejected a boilerplate denial that consisted of "many words that mean very little."  *Id.*

Judge Bibas concurred separately to highlight how the SEC's strategy of "sporadically enforcing ill-fitting rules against crypto companies that are trying to follow the law" creates a "serious constitutional problem."  *Id.* at *27, *29 (Bibas, J., concurring).  He explained that "due process guarantees fair notice," which gives regulated entities the right to "'know what is required of them so they may act accordingly.'"  *Id.* (quoting *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012)).  He further explained that "[e]xisting rules do not fit blockchain technology, but the SEC refuses to recognize this"—indeed, the agency "has offered no meaningful guidance on which

crypto assets it views as securities." *Id.* at *24-*25, *28. Judge Bibas recounted a slew of "contradictory signals" given by the SEC regarding its views on digital assets—for instance, years of SEC inaction before initiating its crypto enforcement campaign, identifying certain digital assets as securities in some enforcement actions but not others, and suing crypto intermediaries but not digital-asset developers. *Id.* at *27. And he concluded that the "SEC's haphazard enforcement strategy of targeting entities that are trying to follow the law does not give potential defendants the notice that due process requires." *Id.* at *28. "Crypto issuers and exchanges are left to cross their fingers and pray that the agency does not fault them." *Id.*

Judge Bibas also recognized that the SEC's conduct eliminates any doubt about the agency's endgame: a "de facto ban" of the industry. *Coinbase*, 2025 WL 78330, at *28 (Bibas, J., concurring). "By combining regulatory uncertainty with unpredictable enforcement against the infrastructure for trading crypto, it can get near-total deterrence" without commensurate judicial review. *Id.* Two SEC Commissioners have agreed that the SEC's actions are naked efforts to "block access to crypto as an asset class" and secure the "extinction of [this] new technology."[28] The SEC, in other words, is seeking to bludgeon digital-asset companies with enforcement suits one-by-one—while preventing those firms from complying with inapt rules—because it wants the digital-asset industry to die.

### III. The SEC's Catch-22 Requires Dismissal Of This Enforcement Action

Dismissal of this action is needed to halt the SEC's unlawful overreach. Although Judge Bibas posited that the constitutional problem created by the SEC's regulatory vice grip was not squarely presented in the denial-of-rulemaking posture, he encouraged "courts confront[ing] such

---

[28] Mark T. Uyeda, Comm'r, SEC, *Statement on Proposed Rule Regarding the Safeguarding of Advisory Client Assets* (Feb. 15, 2023), https://tinyurl.com/2ztdcxx5; Hester M. Peirce, Comm'r, SEC, *Rendering Innovation Kaput: Statement on Amending the Definition of Exchange* (Apr. 14, 2023), https://tinyurl.com/4v7hvwae.

enforcement-by-surprise in future cases" to "bar penalties that were not reasonably foreseeable." *Coinbase*, 2025 WL 78330, at *29 (Bibas, J., concurring). This case presents that opportunity.

As Cumberland rightly argues (at 38-40), the SEC's enforcement campaign against companies like Cumberland and Coinbase violates due process's guarantee of fair notice. The "notice problems" result from the SEC combining an enforcement onslaught with regulatory obfuscation. *Coinbase*, 2025 WL 78330, at *29 (Bibas, J., concurring). Put simply, the SEC's "haphazard enforcement strategy of targeting entities that are trying to follow the law" for punitive, retroactive penalties "does not give potential defendants the notice that due process requires." *Id.* at *28. The agency's new leadership acknowledged as much this week, stating that the SEC's "reliance on enforcement actions to regulate crypto retroactively and reactively, often adopting novel and untested legal interpretations along the way," has created "confusion about what is legal."[29]

To be sure, Cumberland need only—and should—prevail on a plain-text interpretation of the securities laws, because the SEC lacks the novel statutory authority it is asserting. At a minimum, the agency's effort to ban the multi-trillion-dollar digital-asset industry is a major question requiring "clear congressional authorization"—which the SEC lacks. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quotation marks omitted); *see also West Virginia v. EPA*, 142 S. Ct. 2587, 2607–09 (2022); *Coinbase*, 2025 WL 78330, at *28 (Bibas, J., concurring) (an SEC rule "banning crypto assets … would surely face legal challenges").

But dismissal is also required on fair-notice grounds. This Court should reach that question and put a stop to the SEC's unlawful campaign of regulation-by-enforcement.

## CONCLUSION

The Court should grant Cumberland's motion to dismiss.

---

[29] *Supra* note 2.

Dated: January 22, 2025

Respectfully submitted,

/s/ Julia G. Tabat
Julia G. Tabat
Illinois State Bar No. 6336834
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
(214) 698-3465
JTabat@gibsondunn.com

Eugene Scalia (*pro hac vice forthcoming*)
Jonathan C. Bond (*pro hac vice forthcoming*)
Nick Harper (*pro hac vice pending*)
Zach Young (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington D.C. 20036-4504
(202) 955-8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com
ZYoung@gibsondunn.com

*Counsel for Amicus Curiae Coinbase, Inc.*

15